WO                                                                                          JL

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Joseph Benge, | No.  CV 18-00349-PHX-MTL (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health LLC, et al., | |
| Defendants. | |

Plaintiff Robert Joseph Benge brought this civil rights action pursuant to 42 U.S.C. § 1983 when he was confined in the Arizona State Prison Complex (ASPC)-Eyman; he has since been released from prison.  Defendants Corizon Health LLC ("Corizon"), Melanie Louzon, and Carrie Smalley[1] have filed a Motion for Summary Judgment (collectively, the "Medical Defendants").  (Doc. 94.)  Defendants B. Burgess, Anita Hudson, and David Summer (the "State Defendants") have filed a separate Motion for Summary Judgment. (Doc. 96.)  Plaintiff was informed of his rights and obligations to respond to the Motions pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 103), and he failed to do so.  Defendants Corizon, Louzon, and Smalley have filed a Motion for Summary Disposition (Doc. 112).

The Court will grant the Motions for Summary Judgment and deny as moot the

---

[1] Defendant Smalley was named as Defendant Smiley.  The Court will adopt the spelling indicated in Defendants' briefing.

1    Motion for Summary Disposition.[2]

2    **I.    Background**

3              On screening the First Amended Complaint (Doc. 20) under 28 U.S.C. § 1915A(a),

4    the Court determined that Plaintiff stated an Eighth Amendment medical care claim in

5    Count One against Defendants Corizon, Louzon, and Smalley and an Eighth Amendment

6    failure-to-protect claim in Count Two against Defendants Burgess, Hudson, and Summers

7    and directed them to answer the claims.  (Doc. 22.)  The Court dismissed the remaining

8    claims and Defendants.  (*Id.*)

9    **II.   Summary Judgment Standard**

10             A court must grant summary judgment "if the movant shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

12   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

13   movant bears the initial responsibility of presenting the basis for its motion and identifying

14   those portions of the record, together with affidavits, if any, that it believes demonstrate

15   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

16             If the movant fails to carry its initial burden of production, the nonmovant need not

17   produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,

18   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts

19   to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

20   contention is material, i.e., a fact that might affect the outcome of the suit under the

21   governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

22   jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

23   _____

24             [2] Defendants Corizon, Louzon, and Smalley ask the Court to grant summary
25   disposition of their Motion for Summary Judgment based on Plaintiff's failure to respond
     to the Motion.  The Court may not grant summary judgment by default, even if there is a
26   complete failure to respond to the motion.  *See Heinemann v. Satterberg*, 731 F.3d 914,
     917 (9th Cir. 2013).  In *Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010), the Ninth Circuit
27   emphasized that "an ordinary *pro se* litigant, like other litigants, must comply strictly with
     the summary judgment rules.  *Pro se* inmates are, however, expressly exempted from this
28   rule."  *Id.* at 1150 (citation omitted).  "We have, therefore, held consistently that courts
     should construe liberally motion papers and pleadings filed by *pro se* inmates and should
     avoid applying summary judgment rules strictly."  *Id.*

242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

## III.    Medical Care (Defendants Corizon, Louzon, and Smalley)

At the relevant time, Plaintiff was a prisoner in the custody of the Arizona Department of Corrections (ADC) at the ASPC-Lewis Bachman Unit.  (Doc. 97 at 1-2 ¶ 2.)[3]  Plaintiff alleges that Defendants Corizon, Louzon, and Smalley were deliberately indifferent to his serious medical needs, namely, his spinal cord injury and related chronic pain.

### A.    Legal Standard

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard.  First, a prisoner must show a "serious medical need."  *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059– 60 (9th Cir. 1992), *overruled on other*

---

[3] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

1  *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)
2  (internal citation omitted).

3          Second, a prisoner must show that the defendant's response to that need was
4  deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately
5  indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally
6  interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)
7  (internal citations and quotation marks omitted); *see also Wood v. Housewright*, 900 F.2d
8  1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th
9  Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to
10  respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

11          Deliberate indifference is a higher standard than negligence or lack of ordinary due
12  care for the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Neither
13  negligence nor gross negligence will constitute deliberate indifference." *Clement v.*
14  *California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also*
15  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of
16  "indifference," "negligence," or "medical malpractice" do not support a claim under
17  § 1983). "A difference of opinion does not amount to deliberate indifference to [a
18  plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A
19  mere delay in medical care, without more, is insufficient to state a claim against prison
20  officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*,
21  766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must
22  rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.
23  Even if deliberate indifference is shown, to support an Eighth Amendment claim, the
24  prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096.

25  . . . .
26  . . . .
27  . . . .
28  . . . .

**B.     Facts Specific to Defendants Corizon, Louzon, and Smalley**[4]

**1.     Plaintiff's Facts**

On March 18, 2014, Plaintiff's neck was injured after he was assaulted by several other prisoners who had become intoxicated on "prison made" alcohol.  (Doc. 20 at 4.) Plaintiff suffered a similar assault at the hands of intoxicated inmates on April 12, 2014. (*Id.* at 6.)  He again was assaulted by intoxicated prisoners in the last week of June 2014. (*Id.*)

On January 25, 2015, Plaintiff saw Defendant Louzon, who, at the time of Plaintiff's visit, was receiving training from a non-party nurse practitioner (NP), Lawrence Ende.  (*Id.* at 7.)  Neither Defendant Louzon nor NP Ende "address[ed Plaintiff's] shoulder, neck pain—no x-rays, nothing." (*Id.*)  Plaintiff saw Defendant Louzon again on February 17, 2015.  (*Id.*)  At that appointment, he requested a magnetic resonance imaging test (MRI). (*Id.*)  Defendant Louzon told Plaintiff that Defendant Corizon would deny any request she made for an MRI.  (*Id.*)  She also refused to order x-rays, though she did give Plaintiff a two-week prescription for ibuprofen.  (*Id.*)  On March 3, 2015, and April 2, 2015, Plaintiff submitted Health Needs Requests (HNRs) addressed to Defendant Louzon "to no avail." (*Id.*)  Plaintiff continued to suffer losses of consciousness.  (*Id.*)  Each time, the Incident Command System (ICS) was initiated, and Plaintiff was seen by unidentified medical staff, who told him that he was dehydrated.  (*Id.*)

On March 25, 2015, Plaintiff saw Defendant Louzon again.  (*Id.*)  At that appointment, she refused to order an MRI, decreased his gabapentin prescription after he requested an increased gabapentin dosage, and "kicked [Plaintiff] out of her office."  (*Id.*)

---

[4] Because Plaintiff failed to file a response or controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).  However, to the extent Plaintiff failed to controvert Defendants' facts in the First Amended Complaint, the Court will assume those facts are uncontroverted for the purposes of this Order.  *See id.* at 917 (if a summary judgment motion is unopposed, Rule 56 "authorizes the court to consider a fact as undisputed").

On April 8, 2015, Plaintiff learned Defendant Louzon had discontinued his gabapentin prescription. (*Id.*) On April 21, 2015, Plaintiff wrote an inmate letter to Defendant Louzon, former ADC Director Charles Ryan, and Deputy Director Richard Pratt. (*Id.* at 8.) He received no response. (*Id.*)

An MRI was performed on Plaintiff's cervical spine on October 6, 2015, and the results were reviewed by Defendant Smalley the same day. (*Id.*) The MRI revealed that Plaintiff was suffering from two large, long-standing herniated discs and "severe spinal cord compression" that required "immediate emergency room attention." (*Id.*) Instead, Plaintiff was forced to "suffer in pain" until November 15, 2015, when he saw non-party neurosurgeon Marco Marsella. (*Id.*) Dr. Marsella admitted Plaintiff to the hospital and performed "emergency surgery" on Plaintiff's spinal cord the following morning. (*Id.*) Plaintiff continued to receive treatment from Dr. Marsella after he returned to prison from the hospital, but the pain medication he had been receiving, morphine, was stopped "cold turkey" by Defendant Smalley. (*Id.*)

Defendant Smalley allowed Plaintiff to suffer withdrawal symptoms and "actively thwarted" his attempts to be seen by a medical doctor. (*Id.*) Defendant Smalley refused to prescribe Plaintiff pain medication as a result of a Corizon/ADC policy instructing medical staff not to issue any new pain management medication to inmates, "even those with verified treatment records." (*Id.*)

Defendant Corizon was "aware of the 'widespread and systematic' abuse of inmates with regard to health care," that Corizon breached its contract with ADC, that ADC amended its contract with Corizon to increase the "staffing offset penalty" cap to $90,000 per month, and that Ryan and Pratt "remove[d] the previous cap on performance-based sanctions and [added] performance-based incentives" without requiring Corizon to spend the incentive payments on additional staff. (*Id.* at 10-12.) As a result of the foregoing conduct, Plaintiff suffered post-traumatic stress disorder, "mental torment," permanent injury to his spinal cord, and ongoing, daily pain.

. . . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Defendants' Facts

On February 17, 2015, Plaintiff saw Defendant Louzon for a provider chronic care visit. (Doc. 95-1 at 2.)  Defendant Louzon noted that Plaintiff complained of lumps in the left breast area since 2012.  (*Id.*)  Plaintiff requested tramadol for his chronic pain.  (*Id.*)  At the time, Plaintiff was already taking gabapentin (used to treat pain) and Tegretol (used to treat seizures and nerve pain).  (*Id.*)  The plan of care was for Plaintiff to continue to follow-up chronic care visits.  (*Id.* at 6.)  On March 17, 2015, Defendant Louzon renewed gabapentin for Plaintiff's pain.  (*Id.* at 11.)  Defendant Louzon did not treat Plaintiff after March 17, 2015.

On May 1, 2015, Plaintiff saw non-party Dr. Itoro Elijah.  (*Id.* at 14.)  Plaintiff complained of chronic pain in his right shoulder and left tibia.  (*Id.*)  He requested tramadol for pain and gabapentin for eye dryness.  (*Id.*)  Plaintiff also complained of bilateral breast tenderness and swelling for several weeks.  (*Id.*)  Dr. Elijah reviewed an ultrasound of Plaintiff's breasts, which showed "benign pathology" consisting of fatty tissue without mass, cyst, or other lesions.  (*Id.* at 15.)  Dr. Elijah did not prescribe gabapentin and tramadol because there was no clinical indication for the medications at that time.  (*Id.* at 16.)

On August 25, 2015, Plaintiff saw non-party Dr. Julia Barnett for chronic care. (Doc. 95-2 at 2.)  Plaintiff complained of pain caused by a left tibial fracture and tingling and burning in his foot.  (*Id.*)  Plaintiff also reported that his prescription for gabapentin had been discontinued after he had been "found to have low levels."  (*Id.*)  Dr. Barnett prescribed indomethacin for pain but did not prescribe gabapentin because it was not indicated at that time.   (*Id.* at 7.)   Dr. Barnett also requested an offsite radiology consultation for an MRI of Plaintiff's cervical spine.  (*Id.* at 6.)  On September 17, 2015, Plaintiff saw Dr. Barnett for chronic care and reported an episode of dizziness, which he attributed to the heat and lack of air movement in his unit.  (*Id.* at 10.)

On November 4, 2015, Plaintiff saw Defendant Smalley for a provider chronic care visit. (Doc. 95-3 at 2.)  Plaintiff complained of chronic pain to his right shoulder radiating

to his neck since April 2015.  (*Id.*)  Plaintiff denied any injury to this area and reported a chronic pain level of 7 out of 10.  (*Id.*)  Defendant Smalley noted that Plaintiff was previously on gabapentin, but this was discontinued due to "negative drug level."  (*Id.*)  Plaintiff complained of chronic pain to his left lower leg due to a previous fracture and stated that he was taking indomethacin for pain with no relief.  (*Id.*)  Plaintiff told Defendant that it had been recommended that he take gabapentin for Sjogren's disease and keratoconus, baclofen for chronic eye twitching, and tramadol for pain.  (*Id.*)  A recent MRI of cervical spine showed multilevel degenerative changes of Plaintiff's cervical spine with moderate to severe stenosis/neural foraminal narrowing.  (*Id.*)  Defendant Smalley ordered baclofen for pain and noted that Plaintiff was awaiting further evaluation by a neurosurgeon, "pending acceptance."  (*Id.* at 2, 7.)

On November 18, 2015, Plaintiff was admitted to the infirmary and underwent an anterior cervical discectomy and fusion to the C4-5 vertebrae, which was performed by Dr. Marsella.  (Doc. 95-4 at 6.)  Dr. Marsella prescribed morphine and Tylenol #3 for pain, baclofen for muscle spasms, and gabapentin for neuropathy.  (*Id.* at 9.)  After the surgery, Plaintiff complained of pain with radiculopathy from his shoulder to his fingertips and burning on the soles of his feet.  (*Id.* at 6.)  Non-party NP Deborah McGarry noted that Plaintiff had been taking Tylenol #3.  (*Id.*)  NP McGarry ordered Tylenol #3 for breakthrough pain, baclofen for muscle spasm, and gabapentin for neuropathy.  (*Id.*)

On November 20, 2015, Plaintiff saw NP McGarry during infirmary rounds. (*Id.* at 15.) NP McGarry ordered baclofen, gabapentin, ibuprofen, and morphine. (*Id.* at 15.) On November 23, 2015, NP McGarry increased Plaintiff's gabapentin prescription for lingering neuropathy and ordered Tylenol #3 for pain.  (Doc. 95-5 at 4.)

Subsequently, Plaintiff was seen regularly during infirmary rounds and, after he received chronic pain medications, did not report any problems.  (Docs. 95-5, 95-6, 95-7, Doc. 95-8 at 1-8.)  On December 5, 2015, NP McGarry renewed the prescription for morphine. (*Id.* at 9.) On December 7, 2015, Plaintiff reported during infirmary rounds that the day before, he had fallen and hit the back of his head.  (Doc. 95-9 at 2.)  NP McGarry

1   noted Plaintiff had a mild contusion and some swelling around the site.  (*Id.*)  NP McGarry

2   noted that Plaintiff was to have cervical spine films and follow-up with Dr. Marsella on

3   December 14, 2015.  (*Id.*)  NP McGarry noted that a CT scan of Plaintiff's head was not

4   indicated.  (*Id.*)

5           On December 14, 2015, Defendant Smalley renewed ibuprofen for Plaintiff's pain

6   and ordered a follow-up cervical spine x-ray, requested by Dr. Marsella.  (*Id.* at 5, 10.)  On

7   December 22, 2015, Defendant Smalley reviewed Dr. Marsella's follow-up notes and

8   ordered baclofen, dexamethasone, and tramadol.  (Doc. 95-10 at 1, 5.)  On December 28,

9   2015, Plaintiff saw Defendant Smalley for a chronic care visit.  (*Id.* at 8.)  Defendant

10  Smalley noted that Plaintiff had started physical therapy with improvement and was taking

11  baclofen, gabapentin, and tramadol for pain.   (*Id.*)  Plaintiff stated that he continued to

12  have right arm pain and weakness and difficulty swallowing since his surgery.  (*Id.*)

13  Defendant Smalley discontinued the ibuprofen and prescribed indomethacin for pain.  (*Id.*

14  at 13.)

15          On January 15, 2016, Defendant Smalley renewed tramadol and baclofen for

16  Plaintiff's pain.  (Doc. 95-11 at 5, 10.)  On January 19, 2016, Defendant Smalley renewed

17  gabapentin for Plaintiff's pain.  (*Id.* at 16.)   On February 8, 2016, Defendant Smalley

18  renewed baclofen.  (Doc. 95-12 at 5.)   On April 7, 2016, Defendant Smalley renewed

19  tramadol.  (*Id.* at 11.)  Defendant Smalley did not treat Plaintiff after April 7, 2016.  Plaintiff

20  was released from ADC custody at the end of April 2016.[5]  (Doc. 95 at 6 ¶ 22.)

21          **C.     Discussion**

22                  **1.     Serious Medical Need**

23          Defendants do not dispute that Plaintiff's chronic pain was a serious medical need.

24  Examples of indications that a prisoner has a serious medical need include "[t]he existence

25  of an injury that a reasonable doctor or patient would find important and worthy of

---

27  [5] In December 2017, Plaintiff was returned to prison.  (*Id.*)  Plaintiff did not see
    either Defendant Louzon or Defendant Smalley when he returned to prison, and for the
28  reasons discussed below, Plaintiff's treatment from December 2017 forward is irrelevant
    to his claim against Defendant Corizon.  The Court will omit discussion of Plaintiff's
    medical treatment after April 7, 2016.

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059– 60.  Here, the evidence in the record supports a conclusion that Plaintiff's chronic pain was worthy of treatment over a period of at least five years.  *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (a medical issue is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).  Thus, Plaintiff satisfies the objective prong of the deliberate indifference test.  The Court's analysis therefore turns on whether Defendants' conduct with respect to Plaintiff's chronic pain amounted to deliberate indifference.

### 2.    Deliberate Indifference

With respect to the second prong, a plaintiff must first show that the defendant was "subjectively aware of the serious medical need[.]" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017– 18 (9th Cir. 2010) (quotation and citation omitted).  Then, the plaintiff must show: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (2) harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  A plaintiff may meet the harm requirement by demonstrating that the defendant's actions or policies expose the plaintiff to a "substantial risk for serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).

There is no dispute that the Medical Defendants were aware of Plaintiff's serious medical needs.  The Court will therefore only address whether they adequately responded to Plaintiff's serious medical needs.

### a.    Defendant Louzon

Plaintiff saw Defendant Louzon on three occasions between January 25 and March 25, 2015.  At the first visit, Defendant Louzon did not address Plaintiff's neck and shoulder pain.  At the second visit, Plaintiff requested an MRI, and Defendant Louzon told Plaintiff that Defendant Corizon would deny any request she made for an MRI and refused to order

1    x-rays.  At the third visit, Defendant Louzon refused to order an MRI and decreased
2    Plaintiff's gabapentin prescription, although he had requested an increase.

3            According to Plaintiff's medical records, Defendant Louzon did not entirely
4    discontinue Plaintiff's pain medications, and, although she did not prescribe his preferred
5    medications at his preferred dosages, Plaintiff's mere disagreement with Defendant
6    Louzon's treatment decisions does not amount to deliberate indifference.  *See Toguchi v.*
7    *Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  In addition, the evidence in the record
8    indicates that Defendant Louzon renewed Plaintiff's prescription for gabapentin, but Dr.
9    Elijah subsequently did not renew it.  In any event, Plaintiff is not entitled to the specific
10   treatment he wants, even if it had previously been prescribed by another physician.  *See*
11   *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970).

12           Furthermore, "[a]n inmate challenging denial of treatment must [show] that the
13   denial was 'medically unacceptable under the circumstances,' and made 'in conscious
14   disregard of an excessive risk to [the inmate's] health.'"  *Rosati v. Igbinoso*, 791 F.3d 1037,
15   1039 (9th Cir. 2015) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).
16   Even if his pain was not totally alleviated, the Court finds Defendant Louzon reasonably
17   responded to Plaintiff's pain issues.  Plaintiff has not shown that Defendant Louzon's
18   course of treatment was "medically unacceptable under the circumstances." *Id.*  Thus, the
19   Court finds there is no genuine dispute of material fact regarding whether Defendant
20   Louzon was deliberately indifferent to Plaintiff's serious medical needs.

21                            **b.     Defendant Smalley**

22           Plaintiff asserts that Defendant Smalley discontinued his morphine, refused to
23   prescribe pain medication, and "actively thwarted" his attempts to see a medical doctor.
24   Plaintiff does not state when Defendant Smalley discontinued the morphine.

25           The evidence in the record indicates that Defendant Smalley did not discontinue
26   Plaintiff's morphine without also prescribing other medication for Plaintiff's pain.
27   Between December 14, 2015 and April 7, 2016, and Defendant Smalley prescribed Tylenol
28   #3, baclofen, gabapentin, dexamethasone, tramadol, and indomethacin for Plaintiff's pain.

As noted above, although Plaintiff might have preferred morphine, his disagreement with Defendant Smalley's course of treatment does not amount to deliberate indifference.  *See Toguchi*, 391 F.3d at 1058, and Plaintiff is not entitled to a specific medication, so long as the treatment is reasonable, *see Tolbert*, 434 F.2d at 626.

Defendant Smalley prescribed several prescriptions for Plaintiff's pain, and even if his pain was not totally alleviated, the Court finds Smalley reasonably responded to Plaintiff's pain issues.  Plaintiff has not shown that Defendant Smalley's course of treatment was "medically unacceptable under the circumstances." *See Rosati*, 791 F.3d at 1039.  Thus, the Court finds there is no genuine dispute of material fact regarding whether Defendant Smalley was deliberately indifferent to Plaintiff's serious medical needs.

### c.      Defendant Corizon

To prevail on a claim against Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell*, 436 U.S. at 690-94.  *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law).  Accordingly, Plaintiff must show that an official policy or custom caused the constitutional violation.  *Monell*, 436 U.S. at 694.  To make this showing, he must demonstrate that: (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.  *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).  Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice.  *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).

"[T]o avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a . . . custom or policy that caused a constitutional deprivation." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 1999) (citations omitted).  An entity may be held liable if injury results from execution of an expressly adopted official

policy or as a result of a longstanding practice or custom that constitutes "standard operating procedure" of the entity. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 793-94 (9th Cir. 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for a cancer patient over a year amounts to a custom or practice of deliberate indifference) (citing *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)).

Plaintiff alleges Defendant Smalley refused to prescribe Plaintiff pain medication as a result of a Corizon/ADC policy instructing medical staff not to issue any new pain management medication to inmates, "even those with verified treatment records." (*Id.*) However, as discussed above, the evidence in the record demonstrates that Defendant Smalley prescribed several pain medications, albeit not Plaintiff's preferred medication. Thus, there is no evidence in the record that Plaintiff suffered any injury as a result of a Corizon policy instructing medical staff not to issue any new pain management medications.

According to Plaintiff, Defendant Corizon was "aware of the 'widespread and systematic' abuse of inmates with regard to health care," that Corizon breached its contract with ADC, that ADC amended its contract with Corizon to increase the "staffing offset penalty" cap to $90,000 per month, and that Ryan and Pratt "remove[d] the previous cap on performance-based sanctions and [added] performance-based incentives" without requiring Corizon to spend the incentive payments on additional staff. (Doc. 20 at 10-12). However, these allegations do not identify a specific Corizon policy, custom, or practice

1    that resulted in any of Plaintiff's alleged injuries, nor is there any evidence in the record to

2    support the existence of such a policy, practice, or custom.  The Court will therefore grant

3    the Corizon Defendants' Motion for Summary Judgment.

4    **IV.   Statute of Limitations (Defendants Burgess, Hudson, and Summers)**

5         Plaintiff claims that Defendants Burgess, Hudson, and Summers failed to protect

6    him from assaults by intoxicated prisoners.  Defendants Burgess, Hudson, and Summers

7    argue that Plaintiff's claims against them are barred by the statute of limitations.  (Doc. 96

8    at 7.)

9         **A.   Legal Standard**

10        The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum

11   state's statute of limitations for personal injury actions.  *Wilson v. Garcia*, 471 U.S. 261,

12   276 (1985).  The Arizona statute of limitations for personal injury actions is two years.  *See*

13   Ariz. Rev. Stat. § 12-542(1).   Accrual of § 1983 claims is governed by federal law.

14   *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, a claim accrues when the

15   plaintiff "knows or has reason to know of the injury that is the basis of the action."  *Pouncil*

16   *v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d

17   374, 381 (9th Cir. 1998).   In other words, the statute of limitations begins to run "'once a

18   plaintiff has knowledge of the critical facts of his injury, which are that he has been hurt

19   and who has inflicted the injury.'"  *Bibeau v. Pacific Northwest Research Foundation*, 188

20   F.3d 1105, 1108 (9th Cir. 1999), *amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000).

21        **B.   Plaintiff's Facts**

22        Plaintiff relevantly alleges that he complained to Defendants Burgess, Summers,

23   and Hudson regarding other prisoners making and consuming prison-made alcohol, or

24   "hooch," and becoming intoxicated.  Defendants Burgess, Summers, and Hudson "all had

25   knowledge either from [Plaintiff's] informal complaint, Grievance [or] face to face

26   conversation by [Plaintiff] countless times."  (Doc. 20 at 14.)  On April 19 and 20, 2014,

27   the Bachman Unit was on lockdown because of several fights involving intoxicated

28   prisoners.  (*Id.* at 16.)

In a May 14, 2014 grievance, Plaintiff stated that he did not feel safe and had been assaulted "countless times" by intoxicated inmates. (*Id.* at 14.) On June 3, 2014, Defendant Hudson returned as unprocessed the May 14, 2014 grievance. (*Id.*) Also on June 3, Plaintiff spoke to Defendants Burgess, Hudson, and Summers about the risks caused by intoxicated prisoners. (*Id.* at 14-15.) On July 3, 2014, Plaintiff spoke to Defendant Summers in Summers's office about Fourth of July parties being planned by "'hooch' cooking inmates." (*Id.*)

### C.     Grievance Procedure

During the relevant time, Department Order ("DO") #802, Inmate Grievance Procedure governed ADC's Inmate Grievance Procedure and set forth the processes that inmates were required to follow to complete ADC's Standard (non-medical) Grievance Process through the Director's Level. (Kepney Decl., Doc. 97-2 at 2 ¶ 4.) Prisoners receive a written and oral explanation of the Inmate Grievance Procedure at Reception Centers Intake at the outset of their confinement and as part of the orientation process in any subsequent facility. (*Id.* at 3 ¶ 8.)

During the relevant time period, ADC's Standard Grievance Process consisted of four mandatory steps: (1) Informal Complaint Resolution to the CO III; (2) Formal Grievance to the Deputy Warden; (3) First Level Appeal to the Warden; and (4) Appeal to the Director. (*Id.* at 6 ¶ 23.) The decision of the Director is final and constitutes completion of all remedies within the ADC for the Standard Grievance Process. (*Id.* at 8 ¶ 38.)

### D.     Plaintiff's Grievances

Grievance Hearing Officer Rodreco Kepney searched the ADC Central Office Grievance Appeal Log for Standard (non-medical) grievance appeals to the Director or Director's Level submitted by Plaintiff between April 1, 2014 and August 9, 2019. (Doc. 97-2 at 2 ¶ 4, 8 ¶ 39.) Kepney found no entries in the ADC Central Office Grievance Appeal Log to evidence that Plaintiff submitted any Standard (non-medical) grievance appeals to the Director or Director's Level regarding any topics. (*Id.* at 9 ¶ 40.) Plaintiff did not submit any Standard (non-medical) grievance appeals to the Director or Director's

1    Level between 2014 and 2016, and he did not submit any standard grievance appeals to the

2    Director or Director's Level between 2017 and 2019.  (*Id*.)  Because Plaintiff did not timely

3    submit a Standard (non-medical) grievance appeal to the Director or Director's Level

4    regarding his allegations against Defendants Burgess, Hudson, and Summers, pursuant to

5    the grievance procedure, Plaintiff did not, and could not, receive a response from the

6    Director's Level.  (*Id.* ¶ 41.)

7         **E.    Discussion**

8         The State Defendants contend that Plaintiff was advised of his injury more than two

9    years before he filed this lawsuit, and, therefore his Complaint was untimely.  (Doc. 96 at

10   7.)  That is, Plaintiff was assaulted on four occasions, the first assault occurring on March

11   18, 2014, and the last assault occurring on March 16, 2015.  (*Id.*)  The State Defendants

12   argue that Plaintiff had knowledge of the extent of his injury on November 16, 2015, when

13   Dr. Marsella made Plaintiff aware that surgery would not improve his spinal cord

14   condition, although he recommended immediate surgery to prevent additional neurological

15   deterioration.  (*Id.* at 8.)  Thus, according to the State Defendants, Plaintiff's cause of action

16   accrued on November 16, 2015, not June 2016, as Plaintiff claims.  (*Id.*)

17        Plaintiff contends that his claim accrued in June 2016, when Dr. Marsella told him

18   that his injury was an "irreversible catast[r]ophic spinal cord injury."  (Doc. 36 at 7.)

19   Plaintiff notified Defendants Burgess, Hudson, and Summers about the dangers posed by

20   prisoners who drink "hooch" and become intoxicated, the last instance occurring on July

21   3, 2014, when Plaintiff spoke to Defendant Summers about Fourth of July parties being

22   planned by "'hooch' cooking inmates."   Plaintiff suffered an injury as a result of

23   Defendants Burgess, Hudson, and Summers's failure to protect him, at the latest, on March

24   16, 2015, the date on which Plaintiff was last assaulted by intoxicated prisoners.  Thus, no

25   later than March 16, 2015, Plaintiff had "knowledge of the critical facts of his injury, which

26   are that he has been hurt and who has inflicted the injury.'"  *Bibeau*, 188 F.3d at 1108.  The

27   date that Dr. Marsella told Plaintiff his injury was irreversible did not put him on notice of

28   any new injury caused by Defendants Burgess, Hudson, and Summers; rather, Dr. Marsella

informed Plaintiff of the *extent* of his injury, but not the *fact* of his injury.  *See Wallace*, 549 U.S. at 391 (holding that a cause of action accrues when a plaintiff discovers the critical facts of his injury, even if "the full extent of the injury is not then known.")  Thus, Plaintiff's claims against Defendants Burgess, Hudson, and Summers accrued no later than March 16, 2015, and, absent tolling, his original Complaint, filed on February 1, 2018, was untimely.

The Court must apply the forum state's tolling rules.  *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999).  In Arizona, the statute of limitations is tolled while a prisoner exhausts the prison grievance process.  *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 533 (9th Cir. 2011) (order).  The Ninth Circuit has adopted a mandatory tolling provision for claims subject to the Prison Litigation Reform Act.  *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005).

The State Defendants contend that "there is no period of tolling" in this case because Plaintiff did not submit any grievance to the Director's Level between 2014 and 2019.  (*Id.* at 9.)  Accordingly, Defendants assert that the statute of limitations cannot be tolled because Plaintiff did not attempt to exhaust the available administrative remedies.  (*Id.*)

The Court agrees.  Plaintiff is entitled to tolling while he actively exhausts his administrative remedies.  *See id.* at 943.  But he is not entitled to equitable tolling where he abandons the process.  *See Soto v. Sweetman*, 882 F.3d 865, 875 (9th Cir. 2018).  Here, Plaintiff did not complete the grievance procedure for any grievance during the relevant period.  Thus, Plaintiff is not entitled to equitable tolling.  Plaintiff's claims against Defendants Burgess, Hudson, and Summers are time-barred, and the Court will therefore grant their Motion for Summary Judgment.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is **withdrawn** as to Defendants' Corizon, Louzon, and Smalley's Motion for Summary Judgment (Doc. 94), Defendants' Burgess, Hudson, and Summers's Motion for Summary Judgment (Doc. 96), and Defendants Corizon, Louzon, and Smalley's Motion for Summary Disposition (Doc. 112).

1    (2)    Defendants Corizon, Louzon, and Smalley's Motion for Summary

2    Disposition (Doc. 112) is **denied as moot**.

3    (3)    Defendants' Corizon, Louzon, and Smalley's Motion for Summary

4    Judgment (Doc. 94) and Defendants' Burgess, Hudson, and Summers's (Doc. 96) are

5    **granted**, and the action is terminated with prejudice.  The Clerk of Court must enter

6    judgment accordingly.

7    Dated this 18th day of February, 2021.

8

9

10

11    Michael T. Liburdi
      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28